UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CORY PANEBIANCO,

                                                          Case No. 2:21-cv-5466 (DRH)(ST)

                  Plaintiff,

   -against-

SELIP & STYLIANOU, LLP,

                  Defendant.
-----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT'S MOTION TO DISMISS**

**KAUFMAN DOLOWICH & VOLUCK, LLP**
*Attorneys for Defendant*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Telephone: (516) 681-1100
Facsimile: (516) 681-1101

On the brief:
   Brett A. Scher, Esq.
   Adam M. Marshall, Esq.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 2

ARGUMENT .................................................................................................................................. 4

LEGAL STANDARD .................................................................................................................... 4

POINT I
PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF STANDING ................. 5

POINT II
PANEBIANCO'S FDCPA CLAIM FAILS ON THE MERITS .................................................. 8

A.     The FDCPA Does Not Apply to Persons Engaged in Service of Process ........................ 8

B.     The Posting of the Collection Complaint Does Not Violate the FDCPA ......................... 9

POINT III
PANEBIANCO'S GBL § 349 CLAIM FAILS ON THE MERITS ........................................... 10

CONCLUSION ............................................................................................................................. 12

## **TABLE OF AUTHORITIES**

**Cases**                                                              **Page**

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ............................................................................................................... 5

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) .......................................................................................................... 5, 11

Crawford v. Franklin Credit Mgmt. Corp.,
758 F.3d 473 (2d Cir. 2014) ................................................................................................. 10

Evensen v. Northeastern Asset Recovery, Inc.,
2017 WL 2804937 (E.D.N.Y. Jun. 27, 2017) ........................................................................ 9

Faison v. Buckeye Pipe Line Servs. Co.,
2020 WL 2555229 (S.D.N.Y. May 20, 2020) ............................................................... 6, 7, 8

Finnegan v. Long Isl. Power Auth.,
409 F. Supp. 3d 91 (E.D.N.Y. 2019) ..................................................................................... 4

Fountain v. Karim,
838 F.3d 129 (2d Cir. 2016) ................................................................................................... 4

Greystone Bank v. Tavarez,
2010 WL 3325203 (E.D.N.Y. August 19, 2010) ................................................................... 4

Henson v. Santander Consumer USA Inc.,
137 S. Ct. 1718 (2017) ......................................................................................................... 10

In re Arana,
456 B.R. 161 (E.D.N.Y. Bankr. 2011) ................................................................................... 5

Lynch v. City of N.Y.,
952 F.3d 67 (2d Cir. 2010) ..................................................................................................... 5

Makarova v. U.S.,
201 F.3d 110 (2d Cir. 2000) ................................................................................................... 4

Makhnevich v. MTGLQ Investors, L.P.,
2020 WL 764158 (S.D.N.Y. Feb. 14, 2020) ................................................................... 10, 11

Nunez v. Mercantile Adjustment Bureau, LLC,
2020 WL 2475619 (E.D.N.Y. May 13, 2020) ....................................................................... 6

Patel v. Contemporary Classics,
259 F.3d 123 (2d Cir. 2001).................................................................................................5

Romea v. Heiberger & Assocs.,
163 F.3d 111 (2d Cir. 1998).................................................................................................9

Romeo v. FMA Alliance, Ltd.,
2016 WL 3647868 (E.D.N.Y. Jun. 30, 2016).............................................................5, 6, 7

Scarola v. Verizon Communications, Inc.,
146 A.D.3d 692, 45 N.Y.S.3d 464 (1st Dep't 2017) ..........................................................11

Sebelius v. Cloer,
569 U.S. 369 (2013)...........................................................................................................10

Securitron Magnlalock Corp. v. Schabolk,
65 F.3d 256 (2d. Cir. 1995).................................................................................................11

Shulman v. Chaitman LLP,
392 F. Supp. 3d 340 (S.D.N.Y. 2019..................................................................................4

Stutman v. Chemical Bank,
95 N.Y.2d 24, 709 N.Y.S.2d 892 (N.Y. 2000) ...................................................................10

Thompson v. Global Contact Servs., LLC,
2021 WL 3425378 (E.D.N.Y. Aug. 4, 2021).................................................................5, 9

U.S. v. Strock,
982 F.3d 51 (2d Cir. 2020)...................................................................................................5

Varela v. Investors Ins. Holding Corp.,
81 N.Y.2d 958, 81 N.Y.S. 761 (N.Y. 1993) .......................................................................11

**Statutes**

11 U.S.C. § 521(a)(1)..................................................................................................................5

15 U.S.C. § 1692a(6)(D).......................................................................................................8, 9

15 U.S.C. § 1692c(b) ..................................................................................................................8

Fed. R. Civ. P. 12(h)(3)................................................................................................................4

Fed. R. Evid. 201(b)(2)................................................................................................................9

Defendant Selip & Stylianou, LLP ("S&S"), by its attorneys Kaufman Dolowich & Voluck, LLP, respectfully submits this memorandum of law in support of its motion to dismiss the Complaint of Plaintiff Cory Panebianco ("Plaintiff" or "Panebianco") pursuant to Rules 12(h)(3) and 12(c) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Panebianco claims that S&S violated the Fair Debt Collection Practices Act ("FDCPA") and New York General Business Law ("GBL") § 349 by serving him with a summons and complaint in an underlying collection lawsuit (collectively, the "Collection Complaint") "by posting such to [his] apartment door," without placing the process in an envelope or otherwise concealing its content from view. (Compl. at ¶¶ 37-41).[1] Panebianco further alleges that this occurred "[o]n an exact date unknown to Plaintiff, but within a year of this [action]," and that "Plaintiff's tenants saw the [Collection] Complaint," causing Plaintiff "humiliation and embarrassment." (Id. at ¶ 37, 43).

This action should be dismissed for several reasons. First, Panebianco lacks standing to assert the claims at issue because he failed to properly disclose them during the bankruptcy proceeding that preceded this lawsuit. As such, the claims remain property of the bankruptcy estate. Second, Panebianco's Complaint fails to state a viable claim under the FDCPA. Panebianco's claim is based exclusively on his purported displeasure with the manner of service of process of the Collection Complaint and, thus, falls within the FDCPA's process server exemption. Panebianco is clearly attempting to do an end-around on the process server exemption by suing S&S and trying to hold it vicariously liable for the actions of the process server who "post[ed]" the summons. Third, the Complaint fails to state a viable claim under GBL § 349 since

---

[1] A copy of Panebianco's Complaint is annexed to the accompanying Declaration of Brett A. Scher (the "Scher Decl.") as Exhibit "A".

1

the allegations concerning "consumers at large" are conclusory and the conduct alleged was not misleading at all, much less materially so.

## FACTUAL BACKGROUND

### A. The State Court Collection Action

On or about January 22, 2021, S&S, as the attorneys for Discover Bank ("Discover"), filed an action against Panebianco in Suffolk County District Court, titled <u>Discover Bank v. Panebianco</u>, Index No. CV-181-21/BR (the "Collection Action"). (Scher Decl., Exhibit "C"). The Collection Complaint, dated January 15, 2021, asserted that Panebianco had defaulted under a credit agreement with Discover and that he owed Discover the principal sum of $8,579.18 (the "Debt"). (Scher Decl., Exhibit "C" at ¶¶ 5-8).

### B. Service of the Collection Complaint

On March 2, 2021, Mark Thompson ("Thompson") of Progressive Legal Support, a process server hired by S&S, served Panebianco with the Collection Complaint. (Scher Decl., Exhibit "___"). The Affidavit of Service filed in the Collection Action shows that service was effectuated pursuant to CPLR § 308(4), a statute which *expressly requires* "**affixing the summons to the door** of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served[.]" (emphasis added).  Notably, the Collection Complaint was not posted to any "apartment" door but rather the front door of Plaintiff's single-family home at 158 Stuyvesant Drive in Port Jefferson Station, New York ("158 Stuyvesant"). (Scher Decl., Exhibit "D"). Panebianco owns 15 Stuyvesant.  He does not reside in an "apartment" building and, thus, there were no "tenants" that could have seen – let alone saw – the Collection Complaint, "causing [him] humiliation and embarrassment." (Compl. at ¶ 43).

2

C.     **The Bankruptcy Proceeding**

On March 31, 2021, less than a month after he was served with the Collection Complaint, Panebianco filed a voluntary petition for Chapter 7 bankruptcy (the "Petition") in the U.S. Bankruptcy Court for the Eastern District of New York under Case No. 8-21-70584 (the "Bankruptcy Proceeding"). (Scher Decl., Exhibits "E" and "F"). His Petition did not list any claims against third parties as an asset, even though it referenced the existence of the Collection Action.[2] (Scher Decl., Exhibit "" at Schedule A/B).

The Section 341 meeting of creditors was held on May 12, 2021. (Scher Decl., Exhibit "E"). On May 14, 2021, Chapter 7 Trustee R. Kenneth Barnard (the "Trustee") issued a Report of No Distribution wherein the Trustee declared (among other things) that he had made a diligent inquiry into Panebianco's financial affairs and property belonging to the estate; that the estate had no property available for distribution over and above that exempted by law; and that the estate had been "fully administered." The Trustee also requested that he be "discharged from any further duties as trustee." (Scher Decl., Exhibit "E").

On the afternoon of July 14, 2021, two months after the Trustee filed the Report of No Distribution and two days after the deadline for Panebianco's creditors to object to discharge expired,[3] Panebianco's bankruptcy counsel filed an application to amend Schedules A/B and C of his Petition to add "FDCPA Actions" as debtor property valued at $4,000, with a $1,404 Wildcard

---

[2] Schedule E/F of the Petition lists the "[l]ast 4 digits of account number" for the Debt as "21BR," corresponding to the Index Number of the Collection Action, states that the Debt was incurred on "01/15/21," matching the date of the Collection Complaint, and describes the Debt as a "Lawsuit." (Scher Decl., Exhibit "F").

[3] "In a chapter 7 case, a complaint, or a motion under § 727(a)(8) or (a)(9) of the Code, objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4004(a). In this instance, the 341 Meeting was initially scheduled for May 12, 2021, making the deadline for objections July 12, 2021. (Scher Decl., Exhibit "E").

Exemption. (Scher Decl., Exhibit "G"). The amended Schedules described these "FDCPA Actions" as "[m]ultiple claims against debt collectors concerning collection letters or other actions. No maximum number should be inferred from this entry as there may be many cases. Statutory damages per claim of one thousand dollars plus attorney=s (sic) fees and costs." (Scher Decl., Exhibit "G").

On July 15, 2021, just over twenty-four hours after his counsel filed the application to amend, the Bankruptcy Court issued an Order of Discharge and Final Decree discharging Panebianco from bankruptcy and closing the Bankruptcy Proceeding. (Scher Decl., Exhibit "H").

**D.** **The Instant Action**

On August 25, 2021, Panebianco filed the instant action in New York State court. The action was removed to this Court by S&S on October 1, 2021. (ECF Doc. 1). S&S filed its Answer to the Complaint on October 5, 2021. (Scher Decl., Exhibit "B").

## ARGUMENT

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction, i.e., the statutory or constitutional power to adjudicate the dispute. Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016); Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000). Pursuant to Fed. R. Civ. P. 12(h)(3), "[i]f the court determines **at any time** that it lacks subject-matter jurisdiction, [it] must dismiss the action." (emphasis added). "Except for the pre-answer limitation on Rule 12(b)(1) motions, the distinction between a Rule 12(b)(1) motion and a Rule (h)(3) motion is largely academic and the same standards are applicable to both types of motions. Greystone Bank v. Tavarez, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010). A court faced with a Rule 12(h)(3) motion may resolve disputed jurisdictional fact issues by referring

to evidence outside the pleadings and holding an evidentiary hearing if necessary. Finnegan v. Long Isl. Power Auth., 409 F. Supp. 3d 91, 94 (E.D.N.Y. 2019); Shulman v. Chaitman LLP, 392 F. Supp. 3d 340, 350 (S.D.N.Y. 2019).

"'The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim.'" Lynch v. City of N.Y., 952 F.3d 67, 75 (2d Cir. 2010) (quoting Patel v. Contemporary Classics, 259 F.3d 123, 126 (2d Cir. 2001)) (alteration in original). Thus, to survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "may consider documents that are attached to the complaint, incorporated by reference, integral to the complaint, or the proper subject of judicial notice." Thompson v. Global Contact Servs., LLC, 2021 WL 3425378, at *5 (E.D.N.Y. Aug. 4, 2021) (quoting U.S. v. Strock, 982 F.3d 51, 63 (2d Cir. 2020)) (internal quotation marks omitted).

## POINT I

### PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF STANDING

"[P]ursuant to 11 U.S.C. § 521(a)(1), a debtor seeking the benefits of bankruptcy is under a duty to disclose in the relevant schedules all of his or her interests and property rights." Romeo v. FMA Alliance, Ltd., 2016 WL 3647868, at *5 (E.D.N.Y. Jun. 30, 2016). This duty, which continues throughout the course of the bankruptcy proceeding, "includes an obligation to disclose any inchoate legal claims possessed by the debtor." Id. "[B]y disclosing [a] potential cause of action, the debtor allows the trustee to investigate whether it has value, and then prosecute it, settle it, abandon it, or arrange for [the debtor] to prosecute it in exchange for the estate receiving a share

5

of the proceeds." Id. at *5 (quoting In re Arana, 456 B.R. 161, 170 (E.D.N.Y. Bankr. 2011)) (internal quotation marks omitted).

"'[W]hen the bankruptcy case is closed, [any] correctly scheduled property not otherwise administered by the trustee is abandoned to the debtor.'" Ibid.  By contrast, a cause of action that has *not* been properly disclosed by the debtor "'remains property of the bankruptcy estate even after the case is closed -- indeed, unless it is administered or abandoned by the trustee, the action remains the property of the estate forever.'" Ibid.  Courts have repeatedly held that debtors lack standing to pursue such claims after emerging from bankruptcy.  See e.g., Romeo, 2016 WL 3647868, at *9-10; Faison v. Buckeye Pipe Line Servs. Co., 2020 WL 2555229, at *5 (S.D.N.Y. May 20, 2020); Nunez v. Mercantile Adjustment Bureau, LLC, 2020 WL 2475619, at *4 (E.D.N.Y. May 13, 2020).

Panebianco failed to adequately disclose his claims against S&S during the Bankruptcy Proceeding.  As set forth above, Panebianco did not identify any claims against third parties in his original Petition and waited until months after the Trustee filed his Report of No Distribution and the deadline for objections to discharge before he amended his Bankruptcy Petition.  Moreover, since the Amended Schedules were filed barely a day before the Bankruptcy Court issued the Discharge Order, the Trustee plainly lacked a reasonable opportunity to investigate the putative "FDCPA Actions" – which were vaguely described to begin with.  Thus, the claims asserted herein remain property of the bankruptcy estate – not Panebianco.

The Romeo and Faison cases cited above are particularly instructive.  In Romeo, one of the three plaintiffs (Romeo) asserted FDCPA claims concerning a collection letter he received from the defendant months before he filed for Chapter 7 bankruptcy.  Romeo, 2016 WL 3647868, at *1.  Romeo did not identify any potential claims in his original bankruptcy petition and instead

6

filed amended schedules noting a "Possible Fair Debt Collection Claim" only *after* the trustee filed a "report of no distribution" declaring – based on the earlier disclosures – that Romeo possessed no distributable assets.  Id. at *2.  The District Court held that Romeo had "engaged in conduct designed to conceal, or at least minimize the likelihood that his assigned bankruptcy trustee would receive proper notice of his claims," and that his FDCPA claims against the defendant therefore remained the property of his bankruptcy estate.  Id. at *9-11.

The plaintiff in Faison made a similarly belated disclosure of employment-based claims, amending the relevant schedules of his bankruptcy petition "only after the Trustee issued a Report of No Distribution and requested to be discharged from any further duties in that [bankruptcy] matter."  Faison, 2020 WL 2555229, at *4 (emphasis in original).  In concluding that Faison lacked standing to sue, the District Court specifically cited the short amount of time between the amendment and the bankruptcy court's issuance of a final decree discharging Faison from bankruptcy:

> As an additional matter, that the bankruptcy court issued a Final Decree discharging plaintiff from bankruptcy – merely three weeks after plaintiff amended his schedules to disclose the instant claims – does not clearly suggest the Trustee intended not to pursue any claims against defendant on behalf of the estate.  As noted above, plaintiff amended his bankruptcy schedules to reflect his interest in the instant claims one month after the Trustee filed the Report of No Distribution, which indicated the estate was fully administered and requested that the Trustee be discharged from his duties.  Nothing on the bankruptcy case docket suggests the Trustee advised the bankruptcy court he had reviewed plaintiff's amended schedules and abandoned the estate's claims against defendant.  Accordingly, the bankruptcy court's Final Decree and discharge does not unequivocally evidence the Trustee's intent to abandon the estate's claims.

Id. at *5 (emphasis in original).

The same reasoning applies here.  Like the plaintiffs in Romeo and Faison, Panebianco never even attempted to disclose his putative claims against S&S until after the Trustee filed the Report of No Distribution in his Bankruptcy Proceeding.  And Panebianco's delay is particularly

7

suspicious given that his amended Schedules were not only filed a full two months after the Report of No Distribution – whereas Romeo and Faison filed theirs within a month[4] – but *also* after the deadline for creditor objections expired. Regardless, "[n]othing on the bankruptcy case docket suggests the Trustee advised the bankruptcy court he had reviewed plaintiff's amended schedule[] and abandoned the estate's claims against [S&S]." Faison, 2020 WL 2555229, at *5.

Accordingly, dismissal is warranted on this basis alone.

## POINT II

## PANEBIANCO'S FDCPA CLAIM FAILS ON THE MERITS

Even if the Court reaches the merits of Panebianco's claim, dismissal is still warranted. Panebianco asserts that S&S violated 15 U.S.C. §1692c(b) by engaging in "conduct that all but assured that third parties were able to see the [Collection Complaint]" without his consent. (Compl. at ¶¶ 57-59). This FDCPA section provides that, subject to several exceptions, "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, or the attorney for the attorney of the debt collector." 15 U.S.C. § 1692c(b).

**A.     The FDCPA Does Not Apply to Persons Engaged in Service of Process**

What Panebianco's counsel seems to have forgotten is that the FDCPA excludes from its definition of "debt collector" "**any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt**." 15 U.S.C. § 1692a(6)(D) (emphasis added). Thompson, the process server who served the Collection Complaint that Panebianco found to be offensive, obviously fits the description of a person "serving or attempt to serve legal process. . . ." And Panebianco is clearly attempting to sidestep

---

[4] Romeo, 2016 WL 3647868, at *2 (29 days); Faison, 2020 WL 2555229, at *2 (30 days).

8

this exemption by asserting a claim that seeks to hold S&S vicariously liable for *Thompson's* service of legal process. As the process server, it was Thompson (as opposed to S&S) who affixed the Collection Complaint to the door of 158 Stuyvesant. (See Scher Decl., Exhibit "D").[5] Because the imposition of vicarious liability requires, *inter alia*, that "the agent and principal are both debt collectors [under the FDCPA], Evensen v. Northeastern Asset Recovery, Inc., 2017 WL 2804937, at *3 (E.D.N.Y. Jun. 27, 2017) (alteration in original), and Thompson is not a debt collector, Panebianco's FDCPA claim fails on this basis.

The outcome would be the same if S&S had served the papers itself. To be sure, Section 1692a(6)(D) does not immunize "anyone who prepares a communication – **no matter how violative of safeguards the FDCPA affords debtors** – just because the communication is eventually served on the consumer as a prerequisite to beginning a court proceeding[.]" Romea v. Heiberger & Assocs., 163 F.3d 111, 117-18 (2d Cir. 1998) (emphasis added).[6] Here, however, Panebianco is not challenging the *content* of the Collection Complaint but simply the manner in which it was served. (Compl. at ¶¶ 37-42). Since Plaintiff's FDCPA claim does not "extend[] beyond mere service of the [Collection Complaint] on [Plaintiff]," Romea, 163 F.3d at 118, the process server exemption applies regardless of who authored the document.

B.   **The Posting of the Collection Complaint Does Not Violate the FDCPA**

Even if the Court finds that the process service exemption does not apply, to the extent Panebianco is suggesting that posting the Collection Complaint to his apartment door without an

---

[5] The identity of the actual process server is a proper subject of judicial notice since it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" Thompson, 2021 WL 3425378, at *5 (quoting Fed. R. Evid. 201(b)(2)).

[6] In Romea, for example, the Second Circuit held that Section 1692a(6)(D) did not bar the plaintiff's claims regarding a three-day rent demand notice where the plaintiff alleged that the notice, which was prepared by the defendant law firm, failed to contain disclosures required by the FDCPA. 163 F.3d at 113-14.

9

envelope violated the FDCPA, the language of CPLR §308(4) proves otherwise. That statute commands that process be "affix[ed] . . . to the door," and then goes on to require that the subsequent *mailing* to the defendant be enclosed in an envelope:

> . . . [Personal service upon a natural person may be made] **by affixing the summons to the door** of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence **or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served**[.]

(emphasis added).

In interpreting a statute, courts presume "'that the legislature says … what it means and means … what it says.'" Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1725 (2017) (citation omitted) (alterations in original). Moreover, where the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion.'" Sebelius v. Cloer, 569 U.S. 369, 378 (2013) (citation omitted). Here, if the New York legislature had intended to require that process "affix[ed]" to a recipient's door be enclosed in an envelope, like the subsequent mailing, it would have said so.

## POINT III

## PANEBIANCO'S GBL § 349 CLAIM FAILS ON THE MERITS

To state a cause of action under GBL § 349, a plaintiff must plead sufficient facts to demonstrate that the defendant: (1) engaged in consumer-oriented conduct; (2) that was materially misleading to a reasonable consumer; and (3) that the plaintiff suffered injury as a result. Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014) (quoting Stutman v. Chemical Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 895 (N.Y. 2000)).

10

First, the Complaint fails to allege sufficient facts to conclude that the challenged conduct was consumer-oriented. "To be consumer oriented, 'the gravamen of the complaint must be consumer injury or harm to the public interest. The critical question then, is whether the matter affects the public interest in New York.'" Makhnevich v. MTGLQ Investors, L.P., 2020 WL 764158, at *6 (S.D.N.Y. Feb. 14, 2020) (quoting Securitron Magnlalock Corp. v. Schabolk, 65 F.3d 256, 264 (2d. Cir. 1995)). Here, the only well-pleaded facts concern Panebianco alone. Though his Complaint alleges "upon information and belief, Defendant has acted similarly to other consumers," (Compl. at ¶ 69), it is well settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. Twombly, 550 U.S. at 570.

Second, the Complaint fails to plead misleading conduct. The thrust of Panebianco's GBL § 349 claim is that S&S allegedly failed to exercise "reasonable care" in attempting to collect the Debt from Panebianco. (Compl. at ¶¶ 64-66). Even if that were true, which it is not, that is not the standard for a claim of engaging in deceptive conduct in violation of GBL §349. Conduct that is improper but does not mislead the plaintiff in a material way do not constitute "deceptive acts" within the meaning of the statute. Varela v. Investors Ins. Holding Corp., 81 N.Y.2d 958, 960, 81 N.Y.S. 761 (N.Y. 1993); Scarola v. Verizon Communications, Inc., 146 A.D.3d 692, 45 N.Y.S.3d 464 (1st Dep't 2017) ("[D]efendant's continuing to bill plaintiff for telecommunications services, and harassing him for payment, after the relevant account was closed" was "not deceptive or materially misleading, because it was clearly error and not 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"). Nothing about the posting of the Collection Complaint to Panebianco's door, even if improper, could have misled him.

11

## **CONCLUSION**

For all the foregoing reasons, S&S respectfully requests that this Court grant its motion and issue an order dismissing Panebianco's claims pursuant to Rule 12(h)(3) or, alternatively, Rule 12(c) of the Federal Rules of Civil Procedure.

Dated: Woodbury, New York
   June 8, 2022         **KAUFMAN DOLOWICH & VOLUCK, LLP**

              By: /s/ Brett A. Scher
                 Brett A. Scher, Esq.
                 Adam M. Marshall, Esq.
                 *Attorneys for Defendant*
                 135 Crossway Park Drive, Suite 201
                 Woodbury, New York 11797
                 (516) 681-1100

4858-4750-9795, v. 1